## BARGER v. TAYLOR.
(42 Pac. 615; 47 Pac. 618.)

1. USURY—ADVERSE PARTY TO APPEAL—SERVICE OF NOTICE—CODE, § 537.—The word "party," as used in section 537 of Hill's Code, providing that a notice of appeal must be served on every "adverse party," means only one who becomes identified with the case in some mode recognized by law, so as to be bound by the proceeding. Within the scope of this rule, the fact that a contract has been adjudged usurious, and the principal declared forfeited to the state for the use of the school fund, does not make the state a "party" to the proceeding so as to require notice of appeal to be served on it.

2. ADVERSE PARTY TO AN APPEAL—USURY—CODE, § 3589.—The state is not an "adverse party" in the sense that it must be served with a notice of appeal from a judgment or decree in its favor upon consideration of a contract found to be usurious. It is not obliged to intervene in order to obtain the benefit of the forfeiture provided by section 3589, in cases of· usury, and unless it has been made a party to the proceeding in some appropriate manner, it is not a "party" to the litigation at all.

3. TESTIMONY TO ESTABLISH USURY.—Forfeitures, though not favored, are firmly upheld as a penalty to the state for a violation of law, but. proof of the transaction incurring such punishment must not be left to probability or conjecture: *Poppleton* v. *Nelson*, 12 Or. 349, cited and approved.

4. PRESUMPTION AS TO SCOPE OF AGENCY.—The presumption is that an agency comprehends the doing of only lawful things, and the law will always assume that an illegal act, as, for example, accepting usury, was done without the principal's authority or consent.

5. PROOF OF USURY—CODE, § 3589.—In order to establish usury it must be shown that the borrower paid for the loan, either directly or indirectly, a sum more than the amount of interest at the law-

ful rate, and that the lender either received some part of this excess, or authorized or ratified its exaction.

From Wasco: W. L. BRADSHAW, Judge.

Suit in equity by John Barger against O. D. Taylor and wife to foreclose two mortgages, securing certain notes. There was a decree allowing a small recovery on one note, and declaring the principal of the second note forfeited for usury, under the terms of section 3589 of Hill's Code, from which plaintiff appealed.

REVERSED.

For appellant there was a brief over the name of *Dufur & Menefee,* with an oral argument by *Mr. E. B. Dufur.*

For respondent there was a brief and an oral argument by *Mr. Alfred S. Bennett.*

Argued November 4; decided December 2, 1895.

ON MOTION TO DISMISS APPEAL.

PER CURIAM.   I.   This is a suit to foreclose a mortgage. The defense is usury. The court below found the contract to be usurious, and rendered a decree for the amount of the original sum loaned against the defendant in favor of the state for the use of the common school fund, as provided in section 3589 of Hill's Code. From this decree the plaintiff appealed, but did not serve the state with notice thereof. The defendant now moves to dismiss the appeal upon the ground that the state is an "adverse party," and should have been served with notice. Under the decisions of this court, if it could be made to appear that the state is a "party" to the decree appealed from in the sense contemplated by the statute regulating appeals (Hill's Code, § 537), its interest being adverse to

that of appellant, the failure to serve it with notice would be fatal to this appeal. But in our opinion the state cannot, under the circumstances of this case, be deemed a "party" within the meaning of that statute. As used therein, the term "party" must be understood in the ordinary legal sense, and to embrace such persons only as become parties to the case in some mode prescribed or recognized by law, so as to be bound by the proceeding. Now, the state never was made a party to this suit, nor did it become or seek to become such. It never appeared in any way, had no right to adduce testimony, cross examine witnesses, or appeal from the decree had it been to the effect that the contract sued upon was not usurious. The statute in relation to usury requires the court to declare the forfeiture and enter the judgment whenever the contract in suit appears to be usurious: Code, § 3589. The forfeiture is to be declared by the court on its own motion, as the result of the litigation between the parties and by force of the statute. Whenever, in any action or suit on a contract, it is ascertained that the contract is usurious, the law steps in, and, propria vigore, forfeits the original sum to the common school fund of the county. The entry of the judgment or decree in favor of the state is but the means of carrying out the forfeiture, and does not make it a "party" to the proceeding in the sense that it must be served with notice, or that it is entitled to notice. The question of usury is to be determined upon the issues made and evidence offered by the parties to the litigation. By the terms of the statute the principal sum is to be deemed forfeited, and a judgment in favor of the state is to be rendered, whenever "it shall be ascertained in any suit brought on" a contract that it is usurious, but it cannot be judicially so ascertained until the final determination of the suit. So long as the parties

have a right to continue the litigation, either in the court
of original jurisdiction or on appeal, the usurious nature
of the contract remains undetermined, and the state is
not entitled to judgment.  When the suit is fully tried
out, if it then appears that the contract is tainted with
usury, it is the duty of the court to render a judgment in
favor of the state; but, until that time arrives, the state
has no interest in the proceeding, and is not entitled to
be heard or to be served with notice, unless it has in some
way become a party in the manner recognized by law.
The state, therefore, bearing no such relation to the case,
is not, in our opinion, an "adverse party" within the mean-
ing of the statute providing for the manner of taking and
perfecting appeals.  It follows that the motion to dismiss
must be overruled.

MOTION OVERRULED.

Argued November 9, 1896; decided January 18, 1897; rehearing denied.

ON THE MERITS.

Opinion by MR. JUSTICE WOLVERTON.

Plaintiff seeks the foreclosure of two certain mort-
gages by separate causes of suit.  The defendant inter-
posed a plea of payments not credited as a partial defense
to the first cause, and usury as to the second.  The court
below sustained the defendant's contention, and its decree
is for plaintiff upon the first for a small balance due, and
in favor of the state and against the defendants upon the
second.  Plaintiff appeals from the whole decree, but
without making the state a party, or serving it with
notice, and defendants challenge the regularity of such
appeal by a motion to dismiss.  The main case presents
largely questions of fact.  The motion to dismiss was
considered, and an opinion rendered touching it some

time ago, and as to that phase of the case the present consideration is upon a rehearing, but not so as it respects the merits.

2. On the former hearing it was held that the state was not an "adverse party" in the sense that requires it to be served with a notice of appeal from a judgment in its favor made and entered upon an usurious contract. We are now constrained to adhere to that opinion, after a careful re-examination of the reasoning upon which it is based. It would seem that the state is not required to intervene in the first instance, and thereby become a party to the suit or action as a condition to the rendition of judgment in its favor. Section 3589 of Hill's Code provides that "If it shall be ascertained in any suit brought on any contract that a rate of interest has been contracted for greater than is authorized * * * the court in which such suit is prosecuted shall render judgment for the amount of the original sum loaned or the debt contracted, without interest, against the defendant and in favor of the State of Oregon for the use of the common school fund of said county, and against the plaintiff for the costs of suit, whether such suit be contested or not." The judgment is the sequence of a litigation entirely between other parties, and is dependent upon the nature of the contract sued upon. The defendant may plead the usury, and pray a forfeiture, and the state bides the result of the contest, or the court may, without contest, if usury appears, forfeit the sum loaned or the debt contracted; so that, in so far as the state is concerned, its interests are fully conserved without its becoming a party to the litigation, and it is in no sense a necessary, indispensable, or adverse party. Now, if prior to the rendition of judgment in its favor it is not a party in that sense, it is difficult to see how the judgment alone makes it such a party for the purposes of subsequent contest in the same litiga-

tion.  This is a court of review, and its functions are to revise the proceedings of the lower courts, and it is sufficient that we be placed in like position as regards parties as they were, in order that we may correct, if need be, their judgments and decrees.  So that it would seem, if the state is not a necessary nor adversary party below, neither is it here for the purposes of the appeal, which is but a continuation of the litigation instituted and tried out in that court.  Its interests will be as well conserved here without its formal presence as there.  It was stated, arguendo, that so soon as the judgment is entered, the state would have the right to have an execution issue, and that, unless it is notified of an appeal, it could never know when the case had gone to a higher court, and hence might use the execution as though the judgment in the lower court were final.  This result could hardly follow.  As the state is dependent for its judgment upon the result of a litigation between other parties, it is believed it would be dependent for its execution upon whether the judgment has been suspended by an appeal taken by one or more of such parties, and that it could only have an execution under like conditions as one of the parties to the action;  that is to say, it must abide the course of the litigation, and take notice of its condition at all times, as it is entirely dependent for its rights upon the final judgment.  But, however this may be, the question here is whether this court can obtain jurisdiction of the cause without the state being served with the notice, and this depends upon the question whether it is a party to the action, or becomes such by the entry of a judgment in its favor.  For reasons already stated in this and the former opinion we think it is not a party in the sense that requires it to be served with a notice of appeal, and hence this court may acquire jurisdiction to hear the cause without such service.

We come now to the merits, and the remaining questions are mainly of fact. As it pertains to the first cause of suit, the issue is direct whether defendant should have some additional credits not accorded him by plaintiff. We think his claim to these credits is not supported by the testimony, and they should not be allowed. The amount due plaintiff upon the note for $1,277, set out in his first cause of suit, is $400, with interest at ten per cent. per annum from October 12, 1893.

The question arising upon the second cause is whether the note of $1,000 sued on is tainted with usury. The testimony directly bearing upon the transaction is meager. The note is made payable to "Geo. W. Rowland, Agent," and the mortgage executed to secure its payment is to "Geo. W. Rowland, Agt. of." The money loaned belonged to one C. W. Deitzel, who drew his check on French & Co., bankers, for the full amount of $1,000 in favor of Rowland. This check is indorsed by Rowland, showing that he received the money. Deitzel testified that the note was delivered to him soon after its execution, and should have been endorsed by Rowland, but by an oversight was omitted until he had traded it to Barger, the plaintiff herein, when it was endorsed as follows: "Pay to John Barger, without recourse, Geo. W. Rowland." This tends to show that Rowland was the agent of Deitzel in making the loan. The latter evidently knew the loan was about to be consummated, as he consulted the defendant about the security. As touching the transaction, the defendant testifies as follows: "Q. What was the real consideration that you received for the execution of the $1,000 note sued on in this proceeding? A. It was $950 less some expenses of a mortgage, or recording, or something of that kind. Q. Was that all the money you received for the execution of the note? A. Yes, sir." This is, in effect and substance, all the tes-

timony having direct relation to the contract or understanding of the parties touching the loan. There is some other testimony tending to show that defendant had on previous occasions borrowed money from Deitzel; that he at times exacted bonuses or sums of money from him in excess of the lawful rate of interest; that at one time the defendant was acting as the agent of Deitzel in loaning his money, and that it was his custom to exact a bonus from the borrower and divide it with Deitzel. But these negotiations involved transactions other than the obligation sued on here.

3. By statutory intendment, a contract is to be deemed usurious when an unlawful rate of interest has been contracted for, either directly or indirectly, or when any gift or donation of money or property or other valuable thing has been made to the lender or creditor, or any person for him, either directly or indirectly, either by the borrower or debtor, or any person for him, the design of which is to obtain for money loaned, or for debts due or to become due, a greater rate of interest than is allowed by law: Section 3589, Hill's Code. The enactment is explicit and comprehensive, and was intended no doubt to cover every scheme or device by which the lender may obtain for money loaned or for debts due or to become due more than the lawful rate of interest, and ought to be enforced whenever a case is brought within the compass of its provisions. It is penal in its nature, and works a forfeiture of the original sum loaned. However much the law may abhor a forfeiture where it results in a benefit solely to an individual, it is upheld and sustained as a penalty to the state for the infraction of law, but proof of the transaction which involves and incurs the penalty should be clear and satisfactory, and its establishment should not be left to vague inference or mere probabilities or conjecture. It has been so held in this state in a case

wherein it was sought to establish usury under the present enactment: *Poppleton* v. *Nelson*, 12 Or. 349 (7 Pac. 492). It may be taken as established that Rowland retained $50 of the $1,000 for which the defendant executed his note, and that defendant obtained only $950 therefor. Further than this, it does not appear for what purpose Rowland was permitted to withhold the sum named, whether as compensation for his services in procuring the loan in the capacity of a broker, or as agent for Deitzel, or whether Deitzel was to receive the money so retained by Rowland, or any part thereof. It is not clear, nor can it be satisfactorily inferred, because Deitzel had on prior occasions made usurious loans, or that the defendant had at one time acted as his agent in consummating such loans, that this money or any part of it was paid to him by Rowland. It is but a conjecture to say that it was retained for his benefit, and there is no cogent or convincing testimony of the fact that it was so retained.

4. But even if it be conceded that Rowland was the agent of Deitzel, we can only assume, without proof to the contrary, that the agency comprehended the doing of a lawful business, and the consummation of lawful transactions; and, as it respects a business or transaction which operates as an infraction of law, the law will presume that the principal did not direct nor assent thereto, and that such transaction was without the scope of the agent's authority given or conferred. The principle is applied to alleged usurious transactions consummated by an agent. In *Gokey* v. *Knapp*, 44 Iowa, 35, it is said: "An authority to loan money at a legal rate of interest does not include by implication the authority to loan it at an illegal rate. An authority to violate the law will never be presumed." This language is quoted with approval in *Call* v. *Palmer*, 116 U. S. 102 (6 Sup. Ct. 301). It is said in

*Van Wyck* v. *Watters*, 81 N. Y. 352: "The fact that an agent, instructed with money of his principal to invest, exacts a bonus for himself, without the knowledge· or assent of his principal, as a condition to making a loan, does not establish usury. The principal is not liable for such an unauthorized act of the agent, in the absence of proof that he received a portion of the bonus, or in some form reaped a benefit or advantage from the same." So it is held in *Cox* v. *Life Ins. Co.*, 113 Ill. 385: "The fact that an agent, without the authority, consent, or knowledge of his principal, upon loaning the money of the latter, exacts from the borrower a sum in excess of lawful interest, does not make the loan usurious." The doctrine is maintained by many authorities, and we are constrained to adopt it in the present case. See *Estevez* v. *Purdy*, 66 N. Y. 446; *Phillips* v. *McKellar*, 92 N. Y. 34; *Ammerman* v. *Ross*, 84 Iowa, 359 (51 N. W. 6); *Vahlberg* v. *Keaton*, 51 Ark. 534 (4 L. R. A. 462, 14 Am. St. Rep. 73, 11 S. W. 878); *Bell* v. *Day*, 32 N. Y. 165; *Condit* v. *Baldwin*, 21 N. Y. 219 (78 Am. Dec. 137); *Nichols* v. *Osborn*, 41 N. J. Eq. 92 (3 Atl. 155); *Brigham* v. *Myers*, 51 Iowa, 397 (33 Am. Rep. 140, 1 N. W. 613); *Rogers* v. *Buckingham*, 33 Conn. 81.

5. It would follow from these authorities that it was not only necessary for the defendant to show that Rowland was the agent of Deitzel, and as such took and received from him the $50 as a consideration for making or causing to be made the loan in question, but that the act was authorized by Deitzel, or was done with his knowledge or assent, or was in some manner ratified by him. See *Greenfield* v. *Monaghan*, 85 Iowa, 211 (52 N. W. 193), a case much in point. In this latter respect the proof utterly fails, and so we conclude the plea of usury is not sustained, and the plaintiff is entitled to recover upon the second cause of suit the sum of $1,000, with ten per

cent. interest from the date of the note. He is also entitled, under the pleadings and evidence, to an attorney's fee of $140. Let a decree be entered for plaintiff in accordance with this opinion, and for the costs of suit.

REVERSED.