Motion to dismiss appeal denied March 30; argued on the merits
November 9; affirmed December 7, 1943; rehearing denied
January 18, 1944

FRENCH *v.* CHRISTNER ET AL.
(135 P. (2d) 464, 143 P. (2d) 674)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND, and HAY, Associate Justices.

*G. C.* and *A. C. Fulton,* of Astoria, and *Senn & Recken,* of Portland, for A. S. Page, Inc.

*Maguire, Shields, Morrison & Biggs,* of Portland, for A. F. Christner and John Dawson.

*Frank C. Hesse,* of Astoria, and *George P. Winslow,* of Tillamook, for Guy French.

KELLY, J. This case is before us at this time upon plaintiff's motion to dismiss the appeal of defendant, A. S. Page, Inc., a dissolved corporation.

On June 4, 1941, plaintiff, while an employee of one D. T. Waterhouse and while engaged in driving a loaded log-hauling truck on the Oregon Coast Highway in Clatsop county, Oregon, became involved in a collision of his truck with another log-hauling equipment owned by defendant A. S. Page, Inc., a dissolved corporation, and still another log-hauling equipment owned by defendant A. F. Christner, and operated by Christner's employee, defendant John Dawson. As a

result of this collision plaintiff sustained serious and painful injuries.

Plaintiff and his employer were contributors to, and therefore under the protection of, the Oregon Workmen's Compensation Act.

Plaintiff elected to institute this action against the defendants herein, namely, A. F. Christner and John Dawson, and A. S. Page, Inc.

It appears from a supplemental answer filed by defendant A. S. Page, Inc., that certain expenses, incurred for treatment of plaintiff's injuries, and compensation to plaintiff for loss of wages, caused by said collision, were paid by the State Industrial Accident Commission.

A trial was had which resulted in a verdict and judgment against plaintiff in favor of defendants Christner and Dawson; and against defendant A. S. Page, Inc., in favor of plaintiff in the sum of $14,585.60.

Plaintiff was represented by Mr. F. M. Franciscovich, now deceased, and Mr. Frank C. Hesse.

As a basis for plaintiff's motion to dismiss said defendant's appeal, it is urged that defendant's notice of appeal is fatally defective, because it is not addressed to defendants Christner and Dawson, the personal representative of the late Mr. Franciscovich, or the State Industrial Accident Commission or either or any of them.

■ It is obvious that defendant's notice of appeal need only be addressed to adverse parties. This leads to a consideration of the question whether either Mr. Christner, Mr. Dawson, the personal representative of the late Mr. Franciscovich, or the State Industrial Accident Commission were adverse parties to appealing defendant.

■ Plaintiff states in his argument that defendant's notice of appeal was served upon defendants Christner and Dawson. This service in itself alone would not constitute those defendants adverse, and, therefore, necessary parties to the appeal.

■ Whether the appealing defendant's codefendants are adverse parties depends upon whether the right of contribution exists between joint tort feasors. The latest expression of this court on that subject is to be found in the case of *Fidelity & Casualty Company of New York v. Chapman,* 167 Or. 661, 120 P. (2d) 223, wherein this court, speaking through Mr. Justice BELT, say:

"The rule against allowing contribution in cases of this character is so well settled in this state— Smith v. Burns, supra, being particularly in point— that a review of the numerous authorities cited from other jurisdictions is not deemed necessary."

The manner in which the collision occurred in the case from which the foregoing quotation is made is strikingly similar to that of the instant case.

*Silbaugh v. Guardian Building & Loan Association,* 164 Or. 286, 97 P. (2d) 943, 99 P. (2d) 1017, 101 P. (2d) 420, cited by plaintiff, is distinguishable from the case at bar in that in the Silbaugh case, as stated by Mr. Justice LUSK, if the judgment against appellant should be reversed and the nonappealing defendants should be compelled to pay it, they would lose their right to exact contribution from the appellant; while in the case at bar the nonappealing defendants have no right of contribution, nor will they have if plaintiff's appeal results in a reversal and a subsequent trial should result in a judgment against them.

■ *In re Brooks' Estate, (Downing v. Mahone)*, 167 Or. 428, 118 P. (2d) 103, it was held that Mattie Alice Baker was an adverse party. She was a beneficiary of the estate. Plaintiff's claim against the estate had been disallowed. If plaintiff's appeal had resulted in a reversal of the order of disallowance and a further order directing its allowance, Mrs. Baker's interest in the estate would have been materially affected. As to the nonappealing defendant in the instant case, no such result could ensue from appealing defendant's appeal. As to the appealing defendant herein the nonappealing defendants were not and are not adverse parties.

■ With respect to the question whether appealing defendant's notice of appeal should have been addressed to the personal representative of the late Mr. Franciscovich and the State Industrial Accident Commission, it is well settled that a party to a judgment or decree entitled to service of notice of appeal must become a party in some manner recognized by law. *In re Grimes' Estate*, 170 Or. 204, 131 P. (2d) 448; *In re Brooks' Estate*, supra; *Hafer v. Medford & C. L. R. Co., (Davis v. Reddy)*, 60 Or. 354, 117 P. 1122, 119 P. 337.

■ An attorney, who merely represents a party in litigation, performs services therein as an attorney and claims an attorney's lien for such services, is not a party to the judgment rendered in such litigation. *In re Grimes Estate*, supra.

■ It follows that the personal representative of the late Mr. Franciscovich is not such a party. Not being a party, said personal representative was not entitled to service of the notice of appeal by appealing defend-

ant, nor was it necessary to address such notice of appeal to Mr. Franciscovich's personal representative.

In *Barger v. Taylor*, 30 Or. 228, 42 P. 615, this court held that the state is not an adverse party in the sense that it must be served with a notice of appeal from a judgment or decree in its favor upon consideration of a contract found to be usurious.

We think the question, there decided, is analogous to the question whether the State Industrial Accident Commission is an adverse party to appealing defendant in the instant case. The reasoning employed in *Barger v. Taylor,* supra, is pertinent to that question:

"The defendant now moves to dismiss the appeal upon the ground that the state is an 'adverse party', and should have been served with notice. Under the decisions of this court, if it could be made to appear that the state is a 'party' to the decree appealed from in the sense contemplated by the statute regulating appeals (Hill's Code § 537), its interest being adverse to that of appellant, the failure to serve it with notice would be fatal to this appeal. But in our opinion the state cannot, under the circumstances of this case, be deemed a 'party' within the meaning of that statute. As used therein, the term 'party' must be understood in the ordinary legal sense, and to embrace such persons only as become parties to the case in some mode prescribed or recognized by law, so as to be bound by the proceeding. Now, the state never was made a party to this suit, nor did it become or seek to become such. It never appeared in any way, had no right to adduce testimony, cross-examine witnesses, or appeal from the decree had it been to the effect that the contract sued upon was not usurious."

*Barger v. Taylor,* supra, was decided before the statute was amended expressly limiting the required

service of a notice of appeal to "such adverse party or parties as have appeared in the action or suit." Laws of Oregon, 1899, p. 228. The principle announced therein however is in harmony with the amendment.

■ It is true that in actions such as the instant case notice of their institution must be given to the State Industrial Accident Commission and the commission is given a lien for its advances to plaintiff upon any money recovered by plaintiff in such an action; but the commission did not appear in the case, and until the commission has become a party by appearing in the action no notice of appeal need be served upon or addressed to it. Subdivision (1), Section 10-803, Vol. 2, O. C. L. A., p. 201.

■ To the point that generally persons, who were not parties below and who are not parties to the judgment, although interested in the judgment as rendered, are neither necessary nor proper parties to the appeal, see 4 C. J. S., Subject, Appeal and Error, p. 863, § 398, and authorities cited in note 5; also 3 C. J., Subject, Appeal and Error, p. 1017, § 970, and authorities cited in note 12.

Plaintiff's motion to dismiss appealing defendant's appeal is denied.

Argued on the merits November 9; affirmed December 7, 1943; rehearing denied January 18, 1944

ON THE MERITS
(143 P. (2d) 464)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND, and HAY, Associate Justices.

*A. C. Fulton,* of Astoria, and *Frank S. Senn,* of Portland (G. C. & A. C. Fulton, of Astoria, and Senn & Recken, of Portland, on the brief) for appellant.

*George P. Winslow,* of Tillamook (George P. Winslow, of Tillamook, and Frank G. Hesse, of Astoria, on the brief) for respondent.

BELT, J. This is an action to recover damages for personal injuries resulting from a rear-end collision involving three loaded logging trucks and trailers. The jury, by its verdict, exonerated the defendants A. F. Christner and John Dawson from liability but found against the defendant A. S. Page, a dissolved corporation, in the sum of $14,585.69. Hence this appeal assigning as error the denial of motions for nonsuit and a directed verdict; the giving of certain instructions, and the refusal to give certain instructions requested by the appellant; and the order of the court sustaining a demurrer to appellant's supplemental answer.

In considering whether error was committed in submitting this cause to the jury, the evidence must be viewed in the light most favorable to the plaintiff and he must be given the benefit of every reasonable inference in his favor which can be drawn from the evidence. No attention will be given to the conflict in the evidence. The statement of the facts will, therefore, be made in keeping with the above elementary principles of law.

The collision in which plaintiff was injured occurred in the afternoon of a bright sunny day—June 4th, 1941. The pavement was dry. The highway was comparatively level and there was a slight curve to the right going in a northerly direction. The three trucks and trailers involved—each weighing, when loaded with logs, approximately 30 tons—were traveling, as a part of a logging caravan, in a northerly direction on the Oregon coast highway between Seaside and Astoria, Oregon. As a general rule, these trucks traveled about 300 feet apart and at a speed of from 30 to 35 miles an hour. In this caravan there were trucks both in front and behind the three trucks in question. Defendant A. F. Christner was the owner of a truck and trailer driven by the defendant John Dawson which, for the purpose of clarity, will hereafter be designated as Truck No. 1. A. S. Page, Inc., was the owner of the truck and trailer driven by a man named Kelly and will be designated as Truck No. 2, since it followed the truck driven by Dawson. Truck and trailer No. 3, which followed the truck driven by Kelly, was operated by the plaintiff, Guy French. Each truck and trailer was loaded with logs about 40 feet in length and the logs extended 10 or 12 feet beyond the end of the trailer— the over-all length of the truck and trailer, when loaded, being about 50 feet.

It appears that a small brush fire was burning about 200 feet west of the highway at the place in question and that a wind from the west caused a dense cloud of smoke to completely cover the highway for a distance of 150 feet. Truck No. 1 entered this blanket of dense smoke and, just as it was emerging therefrom, was struck in the rear with terrific force by Truck No. 2. As a result of this collision, the highway was blocked.

At the time of the collision, Truck No. 1 was being driven at a speed of from 10 to 12 miles an hour. There is evidence that Truck No. 2, at the time of entering the smoke screen, was about 150 feet distant from the first truck and was traveling at a speed of 30 or 35 miles an hour without lights burning. Inspection after the wreck disclosed that Truck No. 2 was in high over-drive gear; that the brakes on plaintiff's truck were set; and that no lights on any of the trucks were burning. Truck No. 2 was completely demolished and its driver instantly killed.

Plaintiff, who was traveling about 300 feet behind Truck No. 2, said he first observed the smoke when he was about 1,500 feet away but did not see that it was across the highway until he was 400 to 450 feet from the scene of the accident. Plaintiff testified that, when he reached a point 300 to 350 feet from the cloud of smoke, he saw Truck No. 2 disappear in the smoke without the speed thereof being reduced, but that he did not see Truck No. 1 enter the smoke. Plaintiff testified that, immediately before entering the cloud of smoke, he put on his brakes and lights and reduced his speed to 10 or 15 miles an hour. He said that, after having gone nearly 50 feet, his truck collided with the trucks blocking the highway and the logs of appellant's truck extending out behind the trailer demolished the front end and cab of his truck, thereby causing him to be seriously and permanently injured. Plaintiff testified that the smoke was so dense he could not see beyond his radiator but that he could look down and see the yellow line marking the center of the highway and thus he was able to stay on the right side thereof. Plaintiff further stated that he did not realize the density of the smoke until he had entered the same and that he saw no red

light burning on the rear end of the trailer of Truck No. 2. The evidence discloses that this rear stop light operates when the brakes are applied or when the headlights are turned on.

Accepting as true the evidence most favorable to plaintiff—which we must do in considering the questions involved on this appeal—can it be said, as a matter of law, that plaintiff was guilty of contributory negligence? That there is some substantial evidence tending to show negligence on the part of appellant (Truck No. 2) we think is clearly established. To drive into this dense cloud of smoke at a speed of 30 or 35 miles an hour, under the circumstances disclosed by the record, certainly presented a question of negligence for the jury to determine.

The more debatable question is whether it can be said, as a matter of law, that plaintiff failed to exercise that degree of care to avoid injury which would have been exercised by a person of ordinary caution and prudence under the same circumstances. In determining the question of contributory negligence we must measure the conduct of the plaintiff, not in the light of subsequent events, but by the standard of care which would have been exercised by an ordinarily prudent and careful person under the conditions then appearing to exist.

It is undoubtedly the law that a driver of a motor vehicle whose vision is obscured by fog or other weather conditions, dust or smoke, must exercise care commensurate with the danger involved. It is common knowledge that it is extremely dangerous to drive through smoke when the vision is almost completely obscured as in the instant case. What would an ordinarily prudent person have done under the same cir-

cumstances? Would he have driven off the highway and stopped to wait for the smoke to disappear? Or would he have greatly reduced his speed, turned on his lights, and proceeded with the utmost caution? We think the average driver would have proceeded with caution although it is a question over which reasonable-minded persons might well differ.

■ Many collision cases have arisen where the vision was obscured by fog. Most courts hold that such weather conditions demand the exercise of a high degree of care but that it is not negligence as a matter of law to drive through fog: *Silva v. Waldie,* 42 N. M. 514, 82 P. (2d) 282; *Devoto v. United Auto Transp. Co.,* 128 Wash. 604, 223 P. 1050; *Rabenold v. Hutt,* 226 Iowa 321, 283 N. W. 865; *Peasley v. White,* 129 Me. 450, 152 A. 530, 73 A. L. R. 1017. Any experienced driver knows that the utmost care must be exercised under such circumstances but that travel can be maintained with comparative safety when such care is exercised by those using the highway. Undoubtedly, the same principles of law apply to smoke.

■ It is well to bear in mind that the truck and trailer of the plaintiff was not entirely in the smoke when the collision occurred. We refuse to hold, as a matter of law, that it was contributory negligence to enter the smoke at all. See Annotations 37 A. L. R. 587; 73 A. L. R. 1020. Plaintiff had the right, in the absence of knowledge to the contrary, to assume that due care would be exercised by the drivers of the trucks in front of him. He was not bound to anticipate that a collision between Trucks Nos. 1 and 2 would block the highway. Whether plaintiff should have anticipated such obstruction of the highway was a question for the jury under all the facts and circumstances of the case. It may be

that, had the tail light on the rear end of the trailer on Truck No. 2 been burning, plaintiff would have been able to avoid the collision notwithstanding the density of the smoke: *Alt v. Krebs,* 161 Or. 256, 88 P. (2d) 804; *Murphy v. Hawthorne,* 117 Or. 319, 244 P. 79, 44 A. L. R. 1397; *Rozycki v. Yantic Grain Prod. Co.,* 99 Conn. 711, 122 A. 717, 37 A. L. R. 582; *Seibert v. A. Goldstein Co.,* 99 N. J. L. 200, 122 A. 821. Of course, it is possible that, had the tail light been burning, plaintiff could not have seen it on account of the smoke, but that, also, was a matter for the consideration of the jury. There is no evidence tending to show that the red tail light on Truck No. 2 was burning.

■ It is urged that it is negligence, as a matter of law, to drive a motor vehicle at such speed that it can not be stopped within the range of the driver's vision. We think the above contention is sound as a statement of the general rule (5 Am. Jur. 647) but we refuse to apply it to every factual situation. As said in *Chaffee v. Duclos,* 105 Vt. 384, 166 A. 2:

> "While the general rule that the driver of an automobile is as a matter of law guilty of negligence in driving at such a rate of speed as prevents stopping within time to avoid an obstruction within the range of his vision is supported by reason and the weight of authority, it is not a hard and fast rule that must be invariably applied in every case. * * *"

Such rule has no application where the vision of the driver has been obscured by smoke to such an extent that he can not see an obstruction which suddenly and unexpectedly appears before him and which he has no reason to anticipate. Under such circumstances, the court can not say, as a matter of law, that the driver failed to exercise due care to avoid injury. The question

is settled adversely to appellant in *Kiddle v. Schnitzer,* 167 Or. 316, 114 P. (2d) 109, 117 P. (2d) 983; *Alt v. Krebs,* supra; *Schassen v. Motor Stages,* 126 Or. 363, 270 P. 530, and *Murphy v. Hawthorne,* supra.

While the courts in other jurisdictions are not in accord on the above question, it is believed that the better reasoned decisions support the view announced in this state: *Devoto v. United Auto Transp. Co.,* supra; *Marsh v. Burnham,* 211 Mich. 675, 179 N. W. 300; *Lett v. Summerfield & Hecht,* 239 Mich. 699, 214 N. W. 939; *Young v. Great Northern Ry. Co.,* 204 Minn. 122, 282 N. W. 691; *Lambert v. Emise,* 120 N. J. L. 164, 199 A. 44; *Seibert v. A. Goldstein Co.,* supra; *Rozycki v. Yantic Grain Prod. Co.,* supra; *Waring v. Dubuque Elec. Co.,* 192 Iowa 508, 185 N. W. 130; *Caudle v. Zenor,* 217 Iowa 77, 251 N. W. 69; *Kadlec v. Al. Johnson Const. Co.,* 217 Iowa 299, 252 N. W. 103. It is stated in 5 Am. Jur. 648:

"Without denying that in many situations and under many conditions a driver of an automobile is as a matter of law guilty of negligence in driving at such a rate of speed as prevents stopping within time to avoid an obstruction within the range of his vision, there is a strong tendency in the recent cases to refuse to adopt that as a universal formula or a hard and fast rule. Thus, it has been held to have no application in case of emergencies creating unexpected hazards. The rule does not apply to a case where an object or obstruction which the driver has no reason to expect appears suddenly immediately in front of his automobile * * * *." Citing, among other cases in support of the text, *Murphy v. Hawthorne,* supra.

■ It is asserted by defendant that it is illogical and unjust to hold it guilty of negligence and then absolve plaintiff from negligence for doing the same thing.

The fallacy of this argument lies in assuming that the conduct of the parties was the same. The evidence relative to the manner in which plaintiff and the driver of Truck No. 2 (appellant) entered the smoke differed materially. Clearly the jury was permitted to draw from such evidence a reasonable inference of negligence on the part of appellant and a reasonable inference of due care on the part of plaintiff. Furthermore, the plaintiff is entitled to the benefit of every reasonable inference in his favor in determining the issue of negligence. While the question is close, we believe the question of contributory negligence was for the jury and not the court. It would serve no purpose to review the authorities cited from other jurisdictions as, obviously, the decision in each case is based upon its own particular facts and circumstances.

■ No error was committed in sustaining a demurrer to the supplemental answer to the effect that all parties involved in this collision were subject to the Workmen's Compensation Law in that, at the time of the injury, they were engaged in the furtherance of a common enterprise on "premises" over which the defendants and the employer of the plaintiff had joint supervision and control: Section 102-1752, O. C. L. A. It is conceded that all parties concerned contributed to the state industrial accident fund and were subject to the Workmen's Compensation Law. Plaintiff, however, was not an employee of either defendant. The defendants and the employer of the plaintiff were separately engaged in the business of hauling logs from a place south of Seaside to the Lewis river, several miles distant, where the logs were to be dumped. It is, therefore, a third party action which can be maintained, because the parties were not engaged in a common enterprise

and did not have joint supervision and control over the "premises" where the injury occurred. "Premises" as used in the above section is defined as "the place where the employer, or his workman causing the injury, and the employer of the injured workman, are engaged in the furtherance of a common enterprise or the accomplishment of the same or related purposes in operation." Did the parties have joint supervision and control over the Oregon Coast Highway when this injury occurred? It would seem that the answer is obvious. Such control and supervision is vested in the Oregon State Highway Commission: Section 100-114, O. C. L. A. This highway was constructed for the general use of the public and is not one used in connection with the actual place of work where the employer carries on his business: *Inwall v. Transpacific L. Co.*, 165 Or. 560, 108 P. (2d) 522. Authorities cited in support of appellant's contention that the highway constituted "premises" within the meaning of the above section are not in point.

In the case of *Rasmussen v. Geo. Benz & Sons*, 168 Minn. 319, 210 N. W. 75, plaintiff was an employee of an ice company and was injured while using a stairway for the purpose of delivering ice to defendant hotel company.

The plaintiff in *McGrath v. Northwestern Trust Co.*, 178 Minn. 47, 225 N. W. 901, was an employee of an express company, who, while delivering a package to a tenant of an office building, fell into an elevator shaft.

In *Egan v. E. A. Brown Co.*, 193 Minn. 165, 258 N. W. 161, plaintiff was an employee of a farmer and was injured at defendant's grain elevator where he had gone for the purpose of hauling grain.

*Smith v. Kedney Warehouse Co.,* 197 Minn. 558, 267 N. W. 478, is a case where plaintiff was an employee of a soft-drink and beer manufacturer and fell into an open elevator shaft in the warehouse of a warehouse company where his employer's bottled goods were kept.

In the case of *Seidel v. Nicollett Ave. Properties Corp'n,* 202 Minn. 569, 279 N. W. 570, plaintiff was the employee of an elevator repair company and his injury occurred while repairing some elevator doors in a building of one of his employer's customers.

■ No error was committed in denying counsel for appellant the right to inquire, on cross examination of plaintiff, who paid his hospital bill. It was the contention of appellant that, since the bill was paid by the State Industrial Accident Commission, the amount thereof could not be recovered in this action. Section 102-1729, O. C. L. A., grants to the State Industrial Accident Commission the right of a lien ''against the cause of action in the amount of compensation'' recovered, ''including cost of first aid, and other medical, surgical, and hospital service.'' The above statutory provision was not in effect at the time the decision in *McDonough v. National Hospital Association,* 134 Or. 451, 294 P. 351, was rendered, so that case is no longer controlling on the question under consideration. The right of lien was acquired by virtue of an amendment to the above section in 1937 (Laws of Oregon for 1937, Ch. 356). See *Cary v. Burris,* 169 Or. 24, 127 P. (2d) 126, wherein it was held that compensation to the plaintiff by the federal government covering medical and hospital services could not be considered in mitigation of damages in an action for personal injuries for the reason that, under the federal employees' compensation act (5 U. S. C. A. § 776), the injured employee was re-

quired to reimburse the government for such expenditures from the proceeds recovered in the third party action. It would certainly be unjust to exclude from consideration of the jury the cost of hospital and medical services as an element of damages and, then, in the event of recovery, to require the plaintiff to reimburse the State Industrial Accident Commission for such expenses.

The court fairly and fully instructed the jury as to the law applicable to the issues in this case and we see no need, in view of what has been said, to discuss specifically the requested instructions setting forth appellant's theory relative to the duty of the driver of a vehicle to drive at a rate of speed which will enable him to stop within the range of his vision.

 Finally, it is claimed the court erred in giving the following instruction to the jury:

"If you find from a preponderance of the evidence that, after having entered said smoke, there was not sufficient light to render persons and vehicles clearly discernible on such highway at a distance of five hundred feet ahead, then I instruct you that it was the legal duty of the defendant Page, Incorporated, to display two lighted headlamps one on each side of the front of his motor truck and to likewise display at the rear of his logging trailer a lighted red tail light plainly visible under normal atmospheric conditions from a distance of one hundred feet to the rear and the plaintiff had a right to assume that the defendant Page, Incorporated, would do so, and if such defendant failed to do so then I instruct you that it was negligent as a matter of law in that respect."

Appellant thus excepted to such instruction:

"We want to save an exception to the Court's leaving to the jury the question of light on the Page

truck as an issue in this case, for the reason that there is no evidence in this case that light or lack of light had anything to do with the accident. In fact, the evidence is to the contrary and shows that it couldn't have been the proximate cause of the injury. Furthermore, there is no evidence in this case that the Page truck didn't have its lights on when it went into the smoke or after or at the time of the impact.''

There was some substantial evidence—to which attention has heretofore been directed—tending to show that there were no lights on Truck No. 2 as it entered the smoke. In the reply brief it is urged for the first time that: ''It would make no difference as to how dense the smoke was. Under this instruction you would have to have a light which would be sufficient to render persons and vehicles clearly discernible at a distance of 500 feet ahead, an impossible situation.'' We do not so consider the instruction. Furthermore, such contention is not in keeping with the exception taken at the time of the trial.

Finding no error which would warrant a reversal, it follows that the judgment is affirmed.