SCHUYLER, Respondent, vs. KERNAN, Appellant.

*September 16—October 11, 1932.*

For the appellant there was a brief by *Sauthoff & Hansen* and *Anthony E. O'Brien,* all of Madison, and oral argument by *Mr. O'Brien.*

For the respondent there was a brief by *Stephens, Sletteland & Sutherland,* and oral argument by *A. E. Kilmer,* all of Madison.

NELSON, J.   The collision occurred on the 2d day of June, 1931, at about two o'clock in the afternoon, on a six-degree curve, and at a point about fifty-eight feet east of the bridge spanning Waterloo creek.   The concrete pavement was wet. The defendant's truck was being driven in an easterly direction along said highway and the plaintiff's automobile in the opposite direction.   There is evidence that just at the time of the impact the plaintiff's automobile was off the concrete and had been grazing the guard-rail on plaintiff's right-hand side of the road for a distance of about twenty-one feet, and that while the plaintiff's car was in that position it was struck by the left rear corner of the platform of the truck which extended beyond the rear wheels a distance of about five feet.   The whole left side of the automobile came in contact with the platform of the truck with such force as to greatly damage it.   The right side of the car was also damaged as a result of hitting the guard-rail.   It is undisputed that at and just prior to the collision the truck was skidding easterly and in a diagonal position on the road.   After the collision the automobile ran a distance of forty-six feet and stopped and the truck ran off the road to the right and into the guard-rail and supporting posts.   There was a well defined skid mark running back from the truck for a considerable distance, which, at and to the west of the place of the collision, was about sixteen inches over on plaintiff's side of the road.

The jury found that the driver of the defendant's truck was negligent with respect to driving the truck to the left of

the middle of the traveled part of the highway and that the collision was proximately caused by such negligence. Question No. 4 of the special verdict was answered "Yes" by the court, and is as follows:

"Did the plaintiff fail to use ordinary care with reference to operating his automobile on the left side of the middle of the traveled part of the highway just before the collision and while upon the curve in the highway where his view along the highway was obstructed within a distance of 1,000 feet?"

The jury, however, found in answer to questions 5 and 6 that plaintiff's negligence, found by the court, did not contribute to produce the collision and that the plaintiff ought not to have foreseen that such failure to exercise ordinary care might probably produce a collision. The jury also found that the plaintiff did not fail to use ordinary care with reference to driving his automobile to the right of the middle of the traveled part of the highway and assessed plaintiff's damages at $561. The usual motions after verdict were made on behalf of the defendant, all of which were overruled. The plaintiff's motion after verdict to increase the damages from $561 to $961.12, as shown by the undisputed evidence, was granted. Judgment was accordingly entered.

The point of collision was on a six-degree curve, which, according to the map received in evidence and the testimony of the county surveyor who prepared it, extended 440 feet westerly and 300 feet easterly from the ends of the bridge. It is undisputed that easterly from the bridge there is a knoll or hill, though it was not shown either by the map, by the testimony of the county surveyor, or by any other person who had taken measurements, just how far the crest of the knoll is from the easterly end of the curve, or from the place of the accident, or from the easterly end of the bridge. Hence that distance cannot be accurately determined. The

plaintiff testified that the knoll was about a half mile distant from the bridge, and a witness who was riding with him at the time of the accident also so testified. The county surveyor, while being examined with reference to the map prepared by him, was asked the following questions and made the following answers:

"*Q.* Now at the east end of this highway (obviously referring to the end of the curve shown on the map), do you recall that there is a knoll there? *A.* Yes. Further to the east. The road starts to ascend a hill.

"*Q.* But at the point that you have (again obviously referring to the east end of the curve) that does not include the knoll? *A.* No sir. The pavement wasn't very much different than a level pavement around that curve. I say that from my observation, not from measurements. I just observed it when I was there.

"*Q.* And you tell us that this entire distance from 'A to B' marks a curve, all included in the curve? *A.* Yes sir. That is the total length of that curve from the end of the map toward Marshall, there is a straight line to Marshall, and from the end of the curve on this map, at the Waterloo end of the map, there is a straight line that leads toward Waterloo, although it is only straight perhaps up to the top of the next hill. I don't know just how far it is."

Though no specific inquiry was made as to the distance between the east end of the curve and the crest of the knoll, the questions and answers indicate that the knoll was probably located immediately to the east of the curve. It is apparent that defendant's attorney, who questioned the witness, and who was probably familiar with the place of the accident, sought to prove that the map, which showed the easterly arc of the curve to be 300 feet in length, did not in fact include the knoll. The distance between the bridge and the knoll, or at least the distance between the place of the collision and the knoll, should have been definitely shown. That physical fact should not have been left to speculation

or to mere casual estimate. If that physical fact had been definitely determined so that both the court and the jury could have known what that distance is, the outcome of the trial might have been entirely different. As we view the issues, the distance between the place of the accident and the crest of the knoll was of vital if not of controlling importance. Without that fact in evidence we cannot be assured that justice has not miscarried.

The plaintiff testified that, before he got to the knoll, he was following two large Kroger grocery trucks. It is undisputed that the head truck was twenty-one feet long, six feet ten inches wide, and nine feet nine inches high. The dimensions of the second truck were not shown. The plaintiff testified that after reaching the knoll he passed the two trucks, which were traveling at a speed of from twenty to twenty-five miles per hour, in one turnout; that he could not see past the trucks without turning onto his left side of the highway; that after passing the trucks he turned back to the right side of the road when he saw the defendant's truck skidding toward him at a point 250 to 300 feet away and coming on his side of the road. The drivers of the two Kroger trucks testified that the plaintiff passed the two trucks on the curve, and the driver of the first truck testified that he "slapped" on his brakes because he was afraid of hitting the plaintiff's car ahead of him. It is undisputed that plaintiff's automobile first struck the guard-rail at a point seventy-eight feet east of the bridge and that the collision occurred at a point about fifty-seven feet east of the bridge. Question 4 of the special verdict, as hereinbefore stated, was answered "Yes" by the court. The court was clearly of the opinion that the evidence permitted of but one inference: that the plaintiff passed the Kroger trucks on the curve where his view along said highway was obstructed within a distance of 1,000 feet. Sec. 85.16 (5), Stats.

The physical fact as to the distance between the knoll and the place of the collision seems to us to be of controlling importance. If the distance is about a half mile from the bridge as casually estimated by the plaintiff, he had ample time in which to pass the trucks on the straight road before entering upon the curve. If, however, the knoll is only a short distance from the east end of the curve, then obviously the plaintiff could only travel that short distance, whatever it may be, before encountering the curve, which ends 300 feet east of the bridge. If he passed the two Kroger trucks, which were traveling eighty feet apart on the curve and at a rate of twenty-five miles per hour, he could not possibly have completed his passing, running at thirty-five to forty miles an hour, until he had reached a point very near to the place where his car first grazed the guard-rail, seventy-eight feet from the bridge.

It is undisputed that the defendant, for some reason, vigorously applied his brakes just before the collision, as a result of which the rear end of his truck skidded to his left and into the plaintiff's car. No reason for his applying the brakes, other than to avoid a collision with the plaintiff's approaching car, is suggested by the evidence.

From the whole record we cannot reach any other conclusion than that justice has probably miscarried. Under sec. 251.09 this court has the power to grant a new trial where it is probable that justice has miscarried (*Dupont v. Jonet,* 165 Wis. 554, 162 N. W. 664; *Paladino v. State,* 187 Wis. 605, 205 N. W. 320; *Koss v. A. Geo. Schulz Co.* 195 Wis. 243, 218 N. W. 175; *State v. Hintz,* 200 Wis. 636, 229 N. W. 54), although that power is not often exercised. It seems to us that justice requires a new trial.

*By the Court.*—Judgment reversed, with directions to grant a new trial.