Nos. 46,865 and 46,880 Consolidated

Rena Hines and Clark W. Hines, *Appellants*, v. Dee E. Leach, William Bowers, Milton Ferris, Jerry R. Ferris, Herbert Hogue, Curtis Sims and Joe Ferns, *Appellees*.

(512 P. 2d 103)

Opinion filed July 14, 1973.

*Raymond Dahlberg*, of Great Bend, argued the cause, and *Lee Turner* and *Tom Kelley*, of Turner, Chartered, of Great Bend, were on the brief for the appellant.

*Fred N. Six*, of Barber, Emerson, Six, Springer, & Zinn, of Lawrence, argued the cause, and *Kenton C. Granger*, of Granger and Nagels, of Overland Park, was with him on the brief for Dee E. Leach, appellee.

*John A. Bausch*, of Ascough, Bausch, Eschmann, of Topeka, argued the cause and was on the brief for William Bowers, appellee.

*Arthur Palmer*, of Topeka, argued the cause, and *Thomas E. Gleason*, of Ottawa, and *Ernest J. Rice*, of Goodell, Casey, Briman, Rice & Cogswell, of Topeka, were on the brief for Milton Ferris and Jerry R. Ferris, appellees.

*Edward G. Collister, Jr.,* special assistant attorney general, argued the cause and *Vern Miller,* attorney general, was with him on the brief for Curtis Sims, appellee.

*Myron S. Steere,* Ottawa, argued the cause and was on the brief for Joe Ferns, appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a damage action wherein Rena Hines and Clark W. Hines (plaintiffs-appellants) sustained injuries in a head-on automobile collision with another vehicle. The accident occurred at approximately 1:30 p. m. on March 8, 1970, on U. S. Highway 59 approximately six-tenths of a mile north of the city limits of Ottawa, Kansas.

The defendants filed various motions, including motions for summary judgment, prior to trial. The trial court issued a memorandum opinion, filed January 12, 1972, wherein it dismissed the case against defendants Herbert Hogue and Curtis Sims and granted judgment for the remaining defendants and against plaintiffs. The plaintiffs have duly perfected an appeal.

Depositions and statements of 14 witnesses and the parties were taken. Those included in the record provide the following uncontroverted facts:

The Ferris brothers, Milton and Jerry, testified they operated a farm six-tenths of a mile north of Ottawa, Kansas, on U. S. Highway 59 and that the land is owned by William Bowers. Milton Ferris testified the land is pasture land which he and his brother operate as a partnership.

The Ferris brothers had talked about burning off the pasture for a couple of months and on the morning of the accident they decided to do so. Milton Ferris testified about an hour or an hour and one-half before they burned the pasture they contacted the sheriff's office and made other arrangements about getting help. The two Ferris brothers enlisted the help of a neighbor to control the burning and contacted the sheriff about controlling traffic going north and south on the highway in case smoke should blow across the highway. The Ferris brothers also had a tractor and disk in the field to help control the burning operation.

Joe Ferns, the sheriff of Franklin County, Kansas, testified that after the Ferris brothers told him they were going to burn on the Sunday afternoon of March 8, 1970, he arranged to bring Curtis Sims of the Kansas Highway Patrol and one of the Franklin County

deputy sheriffs, Herbert Hogue, out to the location of the burning operation.

The aforementioned men all met at the sale barn lot directly across the road to the east of the field to be burned. When plans were complete, one of the Ferris brothers advised them they were going to light the fire over on the west side of the road. Sheriff Ferns thereupon stationed Deputy Hogue on the road approximately a quarter of a mile north of the accident scene and Trooper Sims approximately a quarter of a mile to the south of the accident scene near the Ottawa city limits. Ferns instructed both Sims and Hogue to regulate and warn traffic of any smoke hazard.

The traffic was not heavy and the fire was started on the southwest corner of the field. It spread along the west side of the field. The wind was blowing out of the southwest at between 5 and 18 m. p. h. The fire burned rapidly because the grass was dry and dense. Ferns testified in his deposition there was a blue-black smoke going high in the sky which appeared to go straight up for a good long while until the fire had probably burned half-way across the field. Then there appeared to be a sudden downdraft of air and the smoke came to the ground and became quite heavy. Ferns thereupon radioed Sims and Hogue and directed them to stop all traffic. It should be noted Sheriff Ferns had stationed his patrol car in the driveway to the sale barn, which was directly east across U. S. Highway 59 from the middle of the burning field at a vantage point for observation. Ferns was sitting in his patrol car approximately 70 or 75 feet from the road when he heard what he thought was an impact, shortly after he had directed Sims and Hogue to cut traffic off. The sheriff estimated that he heard the impact within approximately one minute after he had radioed the two officers directing that traffic be shut off.

Clark W. Hines testified he and his wife had had the flu and, as March 8, 1970, was a rather warm day with a temperature of approximately 70 degrees, they had planned to take a ride around Lake Pomona and return home.

Mr. Hines testified he was proceeding south on U. S. Highway 59 toward Ottawa and was approximately a mile and one-half north of the police car when he first noticed the smoke filtering across the highway. He noticed the police car had its blinker lights on and then he noticed the smoke. His speed at that point was approximately 50 to 55 m. p. h. before he began slowing down. Hines slowed to approximately 5 m. p. h. as he approached the police car,

but the officer waved him through. He started up gradually after stopping momentarily beside the police car, and he imagined he was going somewhere around 15 m. p. h. At this point the smoke was just filtering across the road. The visibility was one to two car lengths. After proceeding from the police car at approximately 15 m. p. h. Hines testified the smoke got so thick that he became quite worried and decided to turn his headlights on. Moments after turning his headlights on he was unable to see anything and he then slowed his car down to approximately 5 m. p. h. and had just turned his wheels to the right to begin feeling for the shoulder of the road when the head-on collision occurred. Mr. Hines never did see the car that collided with his auto. However, evidence showed his auto left 5 feet of skid marks from braking.

Mrs. Dee Leach testified she had been to the grocery store and at a Dairy Treat having a coke prior to the automobile collision in controversy. She lived approximately seven to eight miles north of Ottawa on a farm. Mrs. Leach said the day in question was a nice, warm sunny day and that she was headed north going back home when the accident occurred at approximately 1:55 p. m.

Mrs. Leach saw a patrolman's car sitting off to the side of the road with its flashers going, when she approached the area of the fire from the south. Mrs. Leach also saw a few people beating a fire out in the ditch along the west side of the road. Mrs. Leach estimated her speed at approximately 30 m. p. h. when she saw the highway patrolman. She thereupon slowed down to 25 or possibly 20 m. p. h. when she entered the smoke. Mrs. Leach testified there was just a dim haze when she entered the smoke, but that it then suddenly went pitch black and she lost all sight of everything.

When Mrs. Leach hit the pitch black area of smoke she decided to stop and began slowly pumping the brakes of her automobile in order to come to a stop. The next thing Mrs. Leach remembers is regaining consciousness after she had apparently been knocked out. She does not recall the collision at all. Mrs. Leach does not remember how many times she pumped her brakes nor does she know what rate of speed she was traveling at the exact time of the collision. At no time did Mrs. Leach turn on the headlights of her automobile.

The record affirmatively discloses the entire front end of the Leach vehicle was to the left of the center of the highway at the point of impact, and that Mrs. Leach received a traffic citation as a result of the accident, charging her with driving left of center.

Although it would be possible to give a much more detailed account of the facts and circumstances surrounding the accident and the burning of the field, we do not deem it necessary for the disposition of this case.

Upon reviewing the record filed herein it is our opinion the trial court's judgment dismissing the case as against defendants Herbert Hogue and Curtis Sims and granting the motions for summary judgment filed by defendants Joe Ferns, Milton Ferris, and Jerry R. Ferris should be affirmed. While the record is unclear as to what disposition was made of William Bowers' motion for summary judgment, we construe the memorandum opinion as sustaining his motion for summary judgment. So construed, the trial court's action as to Bowers should be affirmed. We believe, however, the trial court erred in sustaining defendant Dee E. Leach's motion for summary judgment against the plaintiffs, and we must reverse the trial court with respect to that portion of its judgment.

The record affirmatively shows the various defendants, with the exception of Dee Leach, were not negligent in the performance of their duties, thus there can be no liability. William Bowers had nothing to do with the burning of the field. The Ferris brothers did everything possible to assure a safe burning of the field, including the procurement of sufficient help and equipment to contain the fire. Sheriff Ferns obtained the help of Deputy Hogue and Trooper Sims and went over their duties and assignments prior to the institution of the burning. A communications system was set up between the three law enforcement officers and they kept in contact through this means.

When the sudden downdraft of air forcing the smoke onto the highway made visibility extremely limited, the sheriff gave orders for the officers stationed at either side of the fire to stop all vehicles, and his order was immediately followed. The order to stop all traffic was given momentarily after the two cars involved in the collision and passed the officers' respective check points.

At the time of the accident, burning a field on Sunday was not illegal and no negligence can be assigned by reason of this fact. In short, each of the foregoing defendants owing a duty to the plaintiffs performed his duty. As there was no negligence on the part of these defendants, the trial court properly sustained their motions for summary judgment.

On reviewing the plaintiffs' deposition testimony, the trial court erred, however, in finding the plaintiffs contributorily negligent as

a matter of law. Ordinarily, the existence of contributory negligence is a question of fact, it being for the jury to determine from the circumstances of each particular case whether the conduct of a party was such as would be expected of a reasonably prudent person. In ascertaining whether as a matter of law a plaintiff is contributorily negligent, the evidence and all inferences that may be reasonably drawn therefrom must be accepted as true and be considered in the light most favorable to the plaintiff; and if the facts be such that reasonable minds might reach different conclusions therefrom, the issue of contributory negligence must go to the jury. (*Schenck v. Thompson,* 201 Kan. 608, 443 P. 2d 298.)

In our opinion the issue of defendant Leach's negligence and the issue of the plaintiffs' contributory negligence are issues upon which reasonable minds might reach different conclusions.

The judgment of the lower court granting defendant Dee E. Leach's motion for summary judgment is reversed with directions to proceed to trial for a determination of the issues between the plaintiffs and the defendant Leach. The judgment of the lower court dismissing the action against the defendants Hogue and Sims and granting the remaining defendants' motions for summary judgment is affirmed.