Westerman *v.* Stout et al., Appellants.
Stout et ux., Appellants, *v.* Westerman (et al., Appellant).

196

Argued September 13, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Frank N. Gallagher*, with him *Eastburn and Gray*, for appellant at Nos. 855 and 856.

*Victor S. Jaczun*, with him *Donald B. Smith*, for appellants at Nos. 857 and 858.

*David F. Binder*, with him *Raynes, McCarty and Binder*, for appellee at Nos. 855 and 857.

*Samuel B. Moyer*, with him *Power, Bowen & Valimont*, for appellee at Nos. 856 and 858.

OPINION BY PRICE, J., February 27, 1975:

These appeals arise from jury verdicts for Howard Westerman against Helen Stout and United Aircraft jointly, and for Seth Stout against United Aircraft solely. We find no merit in these appeals and will, therefore, affirm the judgments of the lower court. Helen Stout and United Aircraft appeal the judgment entered against them in favor of Howard Westerman at No. 855 and No. 857 October Term, 1974, and Seth and Helen Stout appeal the denial of a new trial at No. 858 October Term, 1974. United Aircraft appeals the judgment against them in favor of Seth Stout at No. 856 October Term, 1974.

At 2:00 a.m. on November 17, 1968, Helen and Seth Stout were traveling west on the Pennsylvania Turnpike. Although the road surface was wet from rain which had fallen during the evening, the highway had been free of fog. Mrs. Stout was driving at a speed of

approximately 45 m.p.h. when the car suddenly encountered a dense fog bank which was so severe as to reduce visibility virtually to zero. Mrs. Stout immediately jammed on her brakes causing the car to slide on the wet pavement. The car came to a halt across both westbound lanes of the turnpike, facing at a ninety-degree angle to the oncoming traffic. The car engine had stalled. Mr. Stout testified he immediately told his wife to move the car from this precarious position, but before she could comply, Mr. Westerman, driving a Volkswagen, collided with the left-front section of the Stout car. Westerman testified he had been traveling at approximately 60 m.p.h. when he encountered a light mist. He stopped accelerating when he was suddenly engulfed in the thick fog. He claimed he saw the Stouts' car just before impact but had no time to avoid the collision. All three persons were injured.

A State Policeman arrived at the scene several minutes after the accident. The turnpike is cut through a hill at this point and both Mr. Stout and the officer noticed that the fog appeared to be emanating from a cooling tower located on the higher ground approximately sixty (60) feet above the road surface and sixty (60) feet away from the shoulder of the road. It was later established that the tower was owned by defendant, United Aircraft. The fog was still rolling down onto the turnpike when the policeman returned to the scene at 6:30 a.m. that same day.

United Aircraft completed construction on the tower in 1967. The tower was to be used as part of the air conditioning system servicing their plant complex. Although the testimony indicated that the tower could have been built almost anywhere on the 32 acre tract owned by United Aircraft, it had in fact been built on that portion of land that immediately abutted the turnpike. Expert testimony further established that the

tower was originally designed to be operated only during the spring and summer, but its year-round operation was subsequently necessary. The testimony also indisputably established that during periods of low temperatures and high humidity the tower emitted a heavy vapor of fog.

After hearing all the evidence, the jury determined that United Aircraft was negligent in constructing and maintaining the tower which caused the dangerous condition on the turnpike. In addition, the jury determined that Mrs. Stout's reaction to the fog was also negligent. The court then heard and denied arguments on motions for a new trial or judgments n.o.v. by both United Aircraft and Mrs. Stout.

Mrs. Stout and United Aircraft both argue that Westerman should have been held contributorily negligent as a matter of law. It is well settled in this Commonwealth that contributory negligence will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement as to its existence. *Kuchinic v. McCrory,* 439 Pa. 314, 266 A. 2d 723 (1970); *Quinn v. Kumar,* 437 Pa. 268, 263 A. 2d 458 (1970); *Perciavelle v. Smith,* 434 Pa. 86, 252 A. 2d 702 (1969); *Latch v. Reburn,* 220 Pa. Superior Ct. 396, 281 A. 2d 673 (1971). In the absence of such a clear determination, the question of contributory negligence is for the jury to decide. *Kuchinic v. McCrory, supra; Gillingham v. Patz,* 429 Pa. 308, 239 A. 2d 287 (1968).

As Judge BODLEY noted in his able opinion below, the jury was entitled to accept as true that, even though there was rain the night of the accident, neither the Stouts nor Westerman encountered any fog as they proceeded west on the turnpike until the sudden fogging condition at the scene. The jury could also find that Westerman was not traveling in excess of the speed limit, nor at a speed greater than that which would

have permitted him to stop within the distance that he could clearly see, had it not been for the sudden emergency created by the unexpected fog. Where there is any evidence which might cause reasonable individuals to disagree as to whether or not the plaintiff, Westerman, was guilty of negligence which contributed to the accident, this question will be resolved by the jury. *Reifel v. Hershey Estates*, 222 Pa. Superior Ct. 212, 295 A. 2d 138 (1972).

Mrs. Stout also contends that, as a matter of law, she should have been held not negligent. She argues that her conduct was the natural and proper reaction to the sudden emergency created by contact with the impenetrable fog bank. It is true that when one is confronted with a sudden emergency he may be able to claim the benefit of the sudden emergency doctrine to escape liability for conduct which would otherwise be negligent. However, before the doctrine will be successfully applied, the jury must determine that the emergency was not in any way created by the person seeking to invoke the rule, *Reifel v. Hershey Estates, supra; Levine v. Mervis,* 373 Pa. 99, 95 A. 2d 368 (1953) ; *Toff v. Rohde,* 208 Pa. Superior Ct. 411, 222 A. 2d 434 (1966), and that the party confronted with the emergency acted in a reasonable manner in light of the circumstances. *Johnson v. Pennsylvania Railroad Company,* 399 Pa. 436, 160 A.2d 694 (1960) ; *DeGregorio v. Malloy,* 356 Pa. 511, 52 A. 2d 195 (1947) ; *West v. Morgan,* 345 Pa. 61, 27 A. 2d 46 (1942) ; *Casey v. Siciliano,* 310 Pa. 238, 165 A. 1 (1933).

Although the jury may have concluded that Mrs. Stout was in no way responsible for the sudden emergency, it may also have concluded that she acted in an unreasonable manner in applying her brakes in such a way as to cause her to slide her car sideways in the road and then to remain in that position on the

highway. We cannot say as a matter of law that. Mrs. Stout was not negligent. The question was properly submitted to the jury and their determination will not be disturbed on appeal.

United Aircraft contends that there was insufficient evidence offered at trial to establish that it was negligent in the construction, operation, or maintenance of the tower. With this contention we cannot agree.

The applicable law as to United Aircraft's negligence is set forth in the Restatement of Torts, 2d §371. This section states: "A possessor of land is subject to liability for physical harm to others outside of the land caused by an activity carried on by him thereon which he realizes or should realize will involve an unreasonable risk of physical harm to them under the same conditions as though the activity were carried on at a neutral place." We must, therefore, address ourselves to whether United Aircraft knew or should have known of the condition, and whether the risk involved was unreasonable.

The testimony offered at trial indicated that United Aircraft *did* know that under the proper atmospheric conditions, i.e., high humidity and low temperature, the tower would emit vapor. The testimony. also revealed that the fogging condition could have been substantially reduced if the exhaust pipes on the tower had been extended higher or if de-misting equipment had been installed in the system.

United Aircraft cannot now argue that although they knew that fog was created, they had no notice that it would cover the turnpike and create a traffic hazard. United Aircraft must be charged with knowledge that once the fog was created, it could be blown onto the road surface. It was bound to anticipate the action of the wind and realize that the man-made fog could reach the roadway and cause visibility problems. *Hud-*

*son v. Grace,* 348 Pa. 175, 34 A. 2d 498 (1943). In addition, the likelihood of such an accident was so obvious and the requirements for reducing the risk so minimal in comparison, that it was unreasonable to permit this condition to exist.

Lastly, United Aircraft questions an evidentiary ruling made by the lower court. The State Policeman who had been at the scene of the accident was called to the stand to corroborate plaintiff's version of the fog condition existing at the scene of the accident. In order to refresh his recollections, the officer referred to his accident report, but the report was not offered into evidence.

In an effort to impeach the testimony of the police officer, counsel for United Aircraft showed him a written statement allegedly given by the officer to an insurance investigator six months after the accident. This statement indicated that the fog was above the turnpike, contradicting the prior statement. The police officer denied that the statement or signature was his. United Aircraft then called the insurance investigator who allegedly took the statement to establish its authenticity. United Aircraft also requested that the signature of the officer be torn from the accident report and sent out with the jury for comparison. The court refused this request.

The general rule is that questions concerned with the admission or exclusion of evidence are within the sound discretion of the trial court and will be reversed on appeal only where a clear abuse of discretion exists. *Patrick F. Dalton Company v. Trans-American Freight Lines Inc.,* 219 Pa. Superior Ct. 223, 280 A. 2d 635 (1971) ; *Cartmel v. Williams,* 207 Pa. Superior Ct. 144 215 A. 2d 282 (1965) ; *Wolfe v. Pickell,* 204 Pa. Superior Ct. 541, 205 A. 2d 634 (1964). Furthermore, the prior inconsistent statement was admissible only for

the purpose of impeaching the officer's testimony. *Wilson v. Pennsylvania Railroad Company*, 421 Pa. 419, 219 A. 2d 666 (1966); *Cf. Commonwealth v. Zapata*, 447 Pa. 322, 290 A. 2d 114 (1972).

In this vein, United was permitted to call the insurance investigator as a witness, and the statement allegedly made by the officer was permitted to go to the jury. In light of this, we cannot say that the lower court abused its discretion in refusing United Aircraft's request.

For the above reasons, we affirm the judgments of the lower court.

CONCURRING AND DISSENTING OPINION BY CERCONE, J.:

I agree with the majority's opinion in all respects, except insofar as it supports the jury's finding that Mrs. Stout acted negligently in responding to a sudden emergency not of her creation. Despite a cogent and well-written opinion by Judge BODLEY in the court below, I agree with Mrs. Stout's contention that she should be found not negligent as a matter of law. I would, therefore, reverse and remand for a trial limited solely to the question of the damages suffered by Mrs. Stout in the instant case.

The scope of our inquiry into jury verdicts based upon negligence or contributory negligence is, admittedly, very limited indeed. It has been stated that "if there is any evidence upon the consideration of which reasonable minded individuals might disagree as to whether or not the plaintiff was guilty of negligence which contributed to the accident, then the question of such contributory negligence is for the jury, not the court, to determine." *Heffernan v. Rosser*, 419 Pa. 550, 555 (1966); *Walker v. Martin*, 214 Pa. Superior Ct. 287 (1969). However, in a proper case, whether or not

a party exercised ordinary care in an emergency may be determined as a matter of law. 2 Blashfield, Automobile Law & Practice, §102.31-.35 (1965).

Mr. Westerman contends that the jury was entitled to conclude that Mrs. Stout negligently applied her brakes, causing her car to skid to a stop in a position which blocked oncoming traffic in both lanes of the Turnpike. In the instant case, as the majority concedes, Mrs. Stout's conduct must be examined in light of the Sudden Emergency Doctrine. This doctrine provides that the fact that an actor is confronted with a "sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action." Restatement of Torts, 2d, §296 (1). In the face of such emergencies the actor is not liable simply because his action was one which, *upon reflection,* no prudent person would take. Restatement of Torts, 2d, §296, Comment b. As one leading commentator has noted in discussing the rule: "[I]t seems clear that the basis of the special rule is merely that the actor is left no time for thought, or is reasonably so disturbed or excited, that he cannot weigh alternative courses of action, and must make a speedy decision, based very largely upon impulse or guess. Under such conditions, the actor cannot reasonably be held to the same conduct as one who has had full opportunity to reflect, even though it later appears that he made the wrong decision, which no reasonable man could possibly have made after due deliberation." W. Prosser, The Law of Torts 169 (4th ed. 1971).

In the instant case, the unrefuted testimony of Mr. Westerman and the Stouts established that the fog which they encountered that night was unlike any they had ever before confronted. It was so dense that it was impenetrable by headlights, giving the effect of a "blackout" or a "darkroom." And, it moved so suddenly that,

as Mr. Westerman described, it seemed to "plop down" on him. Under such a condition, given the fact that visibility was reduced to zero instantly, jamming on the brakes was the natural and reflexive reaction. Indeed, that was also Mr. Westerman's response to the situation, although he collided with the Stout vehicle a split-second after jamming on his brakes.

The fact that the consequence of her reaction was her car's skidding out of control, while unfortunate, does not retrospectively render her conduct negligent. *Wilkerson v. Philadelphia Transp. Co.*, 167 Pa. Superior Ct. 616 (1950). See also *Master v. Goldstein's Fruit & Produce, Inc.*, 344 Pa. 1 (1942); *Lithgow v. Lithgow*, 334 Pa. 262 (1939).

As one court has pertinently allowed: "The law takes account of the impulses of humanity when placed in dangerous positions and does not expect thoughtful care from persons whose lives are thus endangered." *Elmore v. Des Moines City R.R. Co.*, 224 N.W. 28 (Iowa 1929). I respectfully suggest that the majority has not taken due account of the impulses of humanity in the instant case. While, as we all agree, it is not usual for courts to find a lack of negligence as a matter of law, the tendency to do so is greater when the party's conduct is cast as a response to a sudden emergency. 2 Blashfield, Automobile Law & Practice, §102.35 (1965). In numerous cases involving drivers who jammed on their brakes and skidded as a reaction to a sudden emergency, a variety of courts have found their conduct to be non-negligent as a matter of law. See, e.g., *Newcomb v. O'Mahoney*, 103 Pitt. Leg. J. 431 (Pa. 1954); *Coleman v. Byrnes*, 242 S.W. 2d 85 (Tenn. App. 1950); *Murray v. Banning*, 123 P. 2d 715 (Wash. 1943); *Morin v. Carney*, 165 A. 166 (Me. 1933); *Schuyler v. Kernan*, 244 N.W. 575 (Wis. 1932). See also *Tuite v. Union Pac. Stages, Inc.*, 284 P. 2d 333 (Ore. 1955).

In balancing the risks of injury to others, Mrs. Stout's forceful application of the brakes in responding to the sudden emergency, in my opinion, could not reasonably have been construed to have been negligent. Restatement of Torts, 2d, §295 & Comment b. Thus, in light of all the circumstances surrounding Mrs. Stout's conduct, I would hold as a matter of law that Mrs. Stout's reaction in forcefully applying her brakes was not negligent.[1]

HOFFMAN, J., joins in this concurring and dissenting opinion.

---

[1] United Aircraft also maintained that the evidence supported the inference that after bringing her car to a stop, Mrs. Stout permitted it to remain in that position for an unreasonably long period of time. The company claims that this inference arises merely from the fact that Mr. Westerman testified that he had not seen the Stout vehicle prior to his collision with it. That statement, however, was made in response to questions concerning the amount of time Mr. Westerman had to stop between his observation of the Stouts' car and his collision with it. This vague statement was not developed any further, nor was any foundational testimony offered establishing the length of the straightaway preceding the fog bank, and undulations of the highway, or Mr. Westerman's attentiveness to the traffic ahead—factors which would have established his opportunity to observe the Stouts' vehicle prior to his collision with it. In the face of the Stouts' clear and unequivocal testimony that the accident occurred within seconds after their stop, any affirmative inference by the jury that Mrs. Stout had allowed the car to remain in its precarious position for an unreasonable period of time was unwarranted, and certainly insufficient to positively establish her negligence. See Restatement of Torts, 2d, §477.