Argued July 9, affirmed September 18, 1975

SHUM, *Appellant, v.* VENELL, *Respondent.*

539 P2d 1085

*S. David Eves* of Ringo, Walton & Eves, Corvallis, argued the cause and filed a brief for appellant.

*James C. Tait* of Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City, argued the cause and filed a brief for respondent.

O'CONNELL, C. J.

This is an action to recover damages for personal injuries suffered by plaintiff when his automobile and the automobile of defendant Taylor collided in a dense cloud or plume of smoke which settled on the highway as a result of field burning by defendant Venell. Plaintiff charged defendant Taylor with negligence in the operation of his automobile and charged defendant Venell with negligence in failing to post signs or other warning devices indicating dense smoke for approaching traffic.

The facts are not in dispute. On September 5, 1972, plaintiff collected air samples in an area of field burning south of Corvallis, Oregon. While returning to Corvallis, through a smoky area, he suddenly came upon a ball or plume of particularly dense smoke, which prompted him to slow and then stop his vehicle on the roadway. Defendant Taylor was driving at approximately 75 miles an hour in the same direction as plaintiff. He began to slow his car when he first saw plaintiff enter the cloud of smoke one-quarter to one-half mile ahead of him. When he saw plaintiff disappear into the dense plume about 200 yards ahead, Taylor tried to slow down but was unable to do so sufficiently to avoid striking the rear of plaintiff's car.

The smoke had come from the burning of defendant Venell's field adjacent to the road. Venell had a burning permit from the Philomath Fire Department and had checked the wind direction prior to igniting his field to prevent crop disease. After the fire began, the wind shifted sending smoke across the road. Be-

cause the fire could not be stopped at that point without making the smoke thicker, it was allowed to continue burning. The accident occurred about five minutes after the change in wind direction.

On defendant's motion, the trial court struck plaintiff's allegation that defendant Venell was negligent "in failing to post signs or other warning devices indicating dense smoke" for approaching traffic. Plaintiff contends that this constitutes reversible error.

The question is whether a farmer, burning field grass adjacent to a highway, has a duty to post signs or other warning devices to inform motorists who are aware of the existence of smoke on the highway that *dense* smoke is ahead.[1] From a practical standpoint if such a duty were imposed, it would require every farmer burning his field to post such a warning because he could never know in advance whether the smoke would pass over the highway in a dispersed or concentrated form. The imposition of such a stringent duty might well be justified if the failure to warn could be regarded as a substantial factor in alerting motorists of the danger which lay ahead of them. But we agree with the trial judge that warning devices would not have this significance where the approaching motorist has knowledge that smoke has drifted upon the highway ahead of him. In those circumstances, the motorist is warned that danger lies ahead and that it may be great or small, depending upon the density of the smoke on the highway. To impose upon the defendant a duty to warn the plaintiff of that which he will himself discern would place an unneces-

[1] This is not to be confused with the question of whether a defendant could be negligent for causing smoke to go upon the highway. The trial court recognized that there could be negligence for such conduct even as to a motorist who had knowledge of the existence of the smoke on the highway. That issue was submitted to the jury and it returned a special verdict that Venell was not negligent in this respect.

sary burden upon the defendant. Stated in another way, under the circumstances we have before us, the failure to post warnings cannot be considered a causal factor contributing to plaintiff's harm.[2]

Judgment affirmed.

TONGUE, J., dissenting.

The majority, in a short opinion which fails to mention a number of important facts and to cite any legal authority to support the rule adopted by it, would establish a new and important precedent in Oregon to the effect that a farmer, logger, highway contractor, railroad or industrial plant conducting operations on land adjacent to a highway, causing clouds of dense smoke to blow over the highway, owes no duty to warn an approaching motorist of the hazard when the motorist "has knowledge that smoke has drifted upon the highway ahead of him" and that the danger "may be great or small, depending upon the density of the smoke on the highway." The majority also holds that in such a case the failure to warn "cannot be considered a causal factor contributing to plaintiff's harm."

With all due respect to the majority, I am of the opinion that such a holding is contrary to established rules of law, as applied in "smoke" cases decided by

---

[2] We do not intend to hold that there could not be negligence arising from a failure to warn in a situation where the approaching motorist would not otherwise be made aware of the presence of smoke on the highway. We agree with the cases cited in the dissenting opinion which hold that failure to warn under such circumstances may constitute negligence. *See e.g.,* Shelton v. Lowell, 196 Or 430, 249 P2d 958 (1952); Dokken v. Rieger, 255 Or 433, 467 P2d 968 (1970); and Moore v. Plymouth, 249 N C 423, 106 SE2d 695 (1959). Other cases cited such as Austin Road Company v. Evans, 499 SW2d 194 (Tex Civ App 1973); Boob v. Fisher, 225 Md 278, 170 A2d 298 (1961); and Hinkel v. Weyerhaeuser Co., 6 Wash App 548, 494 P2d 1008 (1972), seem to indicate that a warning might be necessary on the facts of the present case. We find these cases unpersuasive.

other courts, and that such a rule also has no proper application in this case because of important facts which the majority does not mention.

*The facts.*

1. *Defendant knew that smoke might blow over the highway.*

The majority holds that "from a practical standpoint" a farmer engaged in field burning adjacent to a public highway should not be required to warn approaching motorists of the dense smoke resulting from such an operation and that to impose such a duty would be "an unnecessary burden" because the farmer "could never know in advance whether the smoke would pass over the highway in a dispersed or concentrated form." The majority also holds that in this case the farmer had "checked the wind direction prior to igniting his field" and that "after the fire began, the wind shifted sending smoke across the road."

According to the record, the highway adjacent to defendant's field ran in a northerly and southerly direction and the field being burned was a 40-acre tract of rye grass which extended along and adjacent to that highway for a distance of over one-fourth mile. The burning operation required approximately one hour.

Defendant Venell was a farmer with considerable experience in field burning operations. His wife, who actively participated with him in field burning operations, testified that although the wind was blowing from the north when the fire was started, it is common in the late afternoons in the late summer in that area for the wind to blow from the west; that it was reasonable to expect that the wind would be variable and might shift without warning; and that "that's why we have all the fire fighting equipment."

An independent witness who observed the lighting of the fire testified that at that time the wind was blowing "in the easterly direction" and "across" the highway and that this was from 20 to 30 minutes prior to the accident. There was also other testimony that the winds on that day were "quite variable" and that during the operation the wind was blowing from the northwest to the southeast, across the road.

Thus, contrary to the majority, there was evidence from which the jury could have found that defendant Venell knew in advance that the wind might well blow smoke from the field burning operation across the adjacent highway in either "dispersed or concentrated form."

2. *Defendant Venell had ample opportunity to give warnings to approaching motorists.*

From the majority opinion it would appear that because of a sudden shift in the wind defendant Venell had no opportunity to warn approaching motorists of the danger of dense smoke blowing over the adjacent highway. This is in accord with defendants' contention that they were "absolved" because of a "lack of opportunity to take precautions." There was ample evidence from which the jury could find to the contrary.

First, because there was evidence that defendant knew before starting the fire that the wind was either already blowing "in an easterly direction" or might shift and blow smoke across the adjacent highway defendant had ample opportunity at that time to post men on the highway well to the north and south of the two ends of the field to stop or otherwise warn approaching cars in the event that dense smoke should blow over the highway.[1] Indeed, defendant Venell had

[1] This is what was done in *Hines v. Leach,* 212 Kan 589, 512 P2d 103 (1973), also involving a field burning operation; in

already given a warning to the owners of the adjacent property before undertaking to burn the field, in accordance with "normal practice."

Secondly, it appears from the evidence that although defendant Venell usually had seven "rigs" of fire or "safety" equipment when he burned a field, he had nine such "rigs" on this occasion. The operator of one of these "rigs," with radio communications (apparently by "walkie-talkie"), was parked near the south end of the field adjacent to the highway with instructions to watch the fire. He notified the "crew" by radio five or ten minutes after the fire was lit that smoke was blowing over the road. Despite that fact, he was given no instructions to flag or otherwise warn traffic approaching from the south. As a result, he continued to sit in his truck until he observed the happening of the accident some five minutes later, at which time he immediately "notified people in the field" by radio.

The operator of another "rig," also a member of the "fire fighting crew," had been stationed to patrol the edge of the field adjacent to the highway and *after* the accident happened he was notified by radio and *then* "went out and started stopping traffic on the highway at the north end of the field." Defendant Venell himself testified that when he learned that smoke was blowing across the road "at that point it didn't seem like it warranted any flagging, the smoke wasn't dense."

From these facts the jury could have properly found that the "flagging" or otherwise warning of approaching traffic was "warranted," at least when the

*Hinkel v. Weyerhaeuser Company*, 6 Wash App 548, 494 P2d 1008 (1972), involving logging slash burning; and in *Teilhet v. County of Santa Clara*, 149 Cal App 2d 305, 308 P2d 356 (1957), involving the burning of grass along a highway.

smoke began to blow across the highway, and that defendant Venell not only knew when he started the fire that smoke might do so but had ample opportunity to assign a man near each end of the field to stop or warn approching traffic in that event—if not before starting this one-hour field burning operation—at least by radio communication to the two men stationed near the highway as soon as dense smoke started blowing across the highway.

3. *Defendant Taylor did not have full knowledge of the nature and extent of the danger as he approached in his car.*

The majority must necessarily assume that in approaching the area of the field burning in his automobile defendant Taylor had full knowledge "that smoke had drifted upon the highway ahead of him" and that the danger "may be great or small, depending upon the density of the smoke on the highway."

As previously stated, there was testimony that the wind had shifted and that some smoke was blowing across the road some five minutes before the two vehicles entered the smoke and the accident immediately followed. There was also other testimony that as the smoke "came over the road, it came and went, would vary in its intensity."

The situation at the time plaintiff approached is accurately described in defendant's brief as follows:

"As Shum proceeded into the area of Inavale School he observed smoke 'all around' *but the visibility was 'all right' and he could drive safely by reducing his speed to about forty miles per hour.* He had his headlights on at that time. Then as Shum passed the Inavale School [at the south end of the burning field], a heavy ball or plume of smoke suddenly came down upon the road. Within a five second period, Shum determined that he

could not turn off of the roadway so he stopped his vehicle. * * *" (Emphasis added)

He also testified that "a heavy ball or plume of smoke came down rather quickly" and that he then saw defendant Taylor's car approaching and was hit immediately by it.

Defendant Taylor was a 20-year-old student with no previous experience in driving through smoke, insofar as shown by the record. His testimony was somewhat confusing, but the jury could find from it that he entered that highway at a point about one-half mile to the south of the point of the accident; that he then saw plaintiff's car "just headed into the fringe of the smoke * * *"; that he was in a hurry and then accelerated to a speed of 75 miles per hour; that as he approached the smoke was "laying down across the road very thick or fairly thick"; that he then slowed down to 50 or 55 miles per hour; *that the smoke "laying across the road" was still "about 20 feet above the road" and "it appeared that you could drive through it safely * * *"*; that after he entered the smoke and started to slow down he saw that it "was starting to get thicker," so he turned on his lights. He then saw the taillights of plaintiff's car and "stood on the brakes," but collided with that car.

*The law.*

1. *The owner of land adjacent to a highway who causes smoke to be blown across the highway has a duty to warn approaching motorists of the danger.*

The rule adopted by the majority gives carte blanche to farmers, loggers, railroads, highway contractors and industrial plants on land adjacent to highways to conduct burning or other operations which may cause clouds of dense smoke to blow over the highways without liability when the smoke is visible

to approaching motorists, provided only that a permit be secured for such an operation. The majority cites no legal authority in support of such a rule.

Even the defendant Venell in his brief recognized the rule to be that the possessor of land adjacent to a highway who creates an artificial condition which he should realize to be one which involves an unreasonable risk to motorists on the highway owes a duty to exercise "all reasonable caution" whenever he has an "opportunity" to do so (citing 2 Restatement of Torts 2d § 368, and Comment *i* (1965)), and that *"in a proper case, performing this duty of reasonable care may require a warning of smoke or dust clouds."*

This, of course, is in accord with the general rule that a possessor of land who creates such an artificial condition "must exercise reasonable care to protect those outside of the land from the condition, whether by warning or otherwise"[2] and that "even though repair or removal of the condition may take some time, the possessor may be required in the interim to post a warning * * *."[3] It is also Hornbook law that one who causes an obstruction on a highway has a duty to give appropriate warnings to motorists.[4]

Defendant cites two cases as "proper cases" for the application of a rule requiring a warning of smoke or dust clouds, but would distinguish both cases on their facts from this case. Thus, defendant recognizes *Teilhet v. County of Santa Clara,* 149 Cal App 2d 305, 308 P2d 356 (1957), in which a county roadside weed burning crew failed to post flagmen to warn approaching motorists, as such a "proper case." Defendant,

---

[2] See 2 Restatement of Torts 2d § 364, Comment *j* (1965).

[3] See *idem,* § 366, Comment *g.*

[4] See 60 CJS, Motor Vehicles 1035, § 207 (1969), and cases cited therein. See also Prosser, Law of Torts 352-54, § 57 (4th ed 1971).

however, would distinguish that case not only on the ground that the posting of flagmen was required by statute, but on the ground that defendant's crew had "prior knowledge that the smoke would obscure the vision of passing motorists."[5]

This court, however, has held that despite the absence of statute a jury can properly find that a reasonable person would post signs warning of an obstruction on a highway. *Frame v. Arrow Towing Service,* 155 Or 522, 530, 64 P2d 1312 (1937). Indeed this is the necessary result of the common law rule which defendant has recognized. As for prior knowledge, the jury could also properly find from the testimony in this case that this defendant, a farmer experienced in field burning (with his nine "rigs" of fire fighting equipment to stand by during the one-hour burning of a 40-acre field of rye grass adjacent to a highway during a time when the winds were variable and often blow from the west) knew in advance that smoke might well be blown across the highway in such a manner as to "obscure the vision of passing motorists."[6]

Courts in other states have held to the same effect. See *Pitcairn v. Whiteside,* 109 Ind App 693, 34 NE2d 943 (1941), involving the burning of grass and brush along a railroad right-of-way adjacent to a highway without a flagman, under a complaint alleging negligence "in failing to take any precautions to protect the

---

[5] The second "proper case" recognized by defendant, *Austin Road Co. v. Evans,* 499 SW2d 194 (Tex Civ App 1973), is discussed below.

[6] As for defendant's related contention that the rule requiring defendant to warn passing motorists of dense smoke is not applicable in this case because he had "no opportunity" to post flagmen or otherwise warn them of the dense smoke, the jury could also have found to the contrary under the testimony in this case, for reasons previously stated.

the traveling public";[7] *Boob v. Fisher,* 225 Md 278, 170 A2d 298 (1961), involving the operation of a tractor with a road sweeper attachment causing a cloud of dust, without flagmen or warning signs, and holding that the jury could have found that defendant "should have posted signs or a flagman on the road";[8] and *Moore v. Town of Plymouth,* 249 NC 423, 106 SE2d 695 (1959), involving the operator of a truck with chemical sprayer of a "fog" of diesel oil and DDT, under a complaint alleging negligence in failing to display adequate warning signs.[9]

In these cases the cloud of smoke, dust or "fog" was visible to approaching motorists, as in this case, but the courts nevertheless held that it was still a

---

[7] In *Pitcairn v. Whiteside,* 109 Ind App 693, 34 NE2d 943 (1941), the court held (at 700):

> "The occupier of land abutting on or adjacent to or in close proximity of a public highway owes a duty to the traveling public to exercise reasonable care to prevent injury to travelers upon the highway from any unreasonable risks created by such occupier, which he had suffered to continue after he knew, or should have known, of their existence, in cases where such occupier could have taken reasonable precautions to avoid harm to such travelers. The traveling public is entitled to make free use of highways and streets, and an occupier of land which is adjacent to or in close proximity of such highway or street has no right to so use the property occupied by him as to interrupt or interfere with the exercise of such right by creating or maintaining a condition that is unnecessarily dangerous."

[8] In *Boob v. Fisher,* 225 Md 278, 170 A2d 298 (1961), the court held (at 299):

> "* * * They [the jurors] were further told that if they found that he was doing so, then Mr. Boob and his employer were required to give adequate warning to other users of the highway of the presence of the sweeper; and the question of the adequacy of the warning was also squarely submitted to the jury. * * *"

[9] In *Moore v. Town of Plymouth,* 249 NC 423, 106 SE2d 695 (1959), the court held (at 703) that the jury could have found that defendant was negligent "by creating a dangerous condition, with no warning or signals to the traveling public of such condition, except * * *."

question of fact for the jury whether defendant should have posted flagmen or otherwise warned approaching motorists of the smoke. To the same effect, see *Hinkel v. Weyerhaeuser Company,* 6 Wash App 548, 494 P2d 1008 (1972), involving log slash burning, in which the adequacy of the warnings was also submitted to the jury by the trial court despite the posting of flagmen to stop and warn approaching traffic.

See also *Gulf Oil Corp. v. Turner,* 235 So 2d 464 (Miss 1970), involving burning of "wooded area" adjacent to a highway; *Oviatt v. Garretson,* 205 Ark 792, 171 SW2d 287 (1943), involving burning of grass on a railroad right-of-way adjacent to a highway; *Westerman v. Stout,* 232 Pa Sup 195, 335 A2d 741 (1975), involving the "tower" of an industrial plant which emitted a "heavy vapor of fog,";[⊗] *Hines v. Leach,* 212 Kan 589, 512 P2d 103 (1973), also involving a field burning operation; *Keith v. Yazoo & MVR Co.,* 168 Miss 519, 151 So 916, 917 (1934), involving smoke from fire on railroad right-of-way—plaintiff hit by another car in smoke; *Ryan v. First Nat. Bank & Trust Co. of Racine,* 236 Wis 226, 294 NW 832, 835 (1940), involving burning of grass on flying field; and *Atchison v. Texas & P Ry Co.,* 143 Tex 466, 186 SW2d 228 (1945), involving smoke from grass fire on railroad right-of-way and citing other cases, as well as cases cited in Annot., 150 ALR 371, and in 60 CJS, *supra,* 1108, § 234(3) n. 45, 46, 46.5.

---

[⊗] In *Westerman v. Stout,* 232 Pa Sup 195, 335 A2d 741 (1975), the court held (at 745):

"* * * United Aircraft must be charged with knowledge that once the fog was created, it could be blown onto the road surface. It was bound to anticipate the action of the wind and realize that the man-made fog could reach the roadway and cause visibility problems. *Hudson v. Grace,* 348 Pa 175, 34 A2d 498 (1943). In addition, the likelihood of such an accident was so obvious and the requirements for reducing the risk so minimal in comparison, that it was unreasonable to permit this condition to exist."

In such cases, however, as in this case, the jury could properly find that a defendant who secured a permit to burn a field, slash or brush was not negligent in setting the fire, but that he nevertheless owed a duty to passing motorists to flag or otherwise warn them of possible dense smoke. Yet in this case the trial court submitted only the first question to the jury and refused to submit the second question. In my opinion, this was error.

2. *Whether the failure to warn approaching motorists was a cause of the accident was a question of fact for the jury.*

The second case which, according to defendant, was a "proper case" to require a warning of a smoke or dust cloud was *Austin Road Co. v. Evans,* 499 SW2d 194 (Tex Civ App 1973), involving a lime dust cloud from a highway construction project. Defendant would, however, distinguish that case on the ground that "[e]vidence showed that motorists were unaware of the unusual density of the lime clouds * * *." In support of that same contention, defendant cites 2 Harper and James, The Law of Torts 1490-491, § 27.13 (1956), among other authorities, stating the rule that "there is no duty to warn others of *clear and obvious dangers.*"

First of all, there is evidence in this case from which the jury could properly find that as defendant Taylor approached the smoke from this field burning operation there was no "clear and obvious danger." As previously noted, the jury could have found from the testimony of defendant Taylor, among other things, that as he approached the smoke, which was then blowing across the road, the smoke was still about 20 feet above the road and it appeared to him that it was safe to drive through, but that as he proceeded it suddenly became so dense that he turned on his lights and only then saw the taillights of plaintiff's car, with which he then collided.

Thus, there was testimony in this case, as in *Austin Road Co. v. Evans, supra,* from which the jury could have found that defendant Taylor was "unaware of the unusual density" of the smoke, so as to make both cases "proper cases" for application of the rule requiring a warning to approaching motorists of the danger of dense smoke. In other words, the jury could have found from the testimony in both cases that the danger from the smoke blowing across the road was not a "clear and obvious danger."

As held in *Kehm v. Dilts,* 222 Iowa 826, 270 NW 388, 391 (1936), also a "warning" case, although under different facts, "[t]here is a difference between seeing something in the roadway and realizing that danger was likely to result therefrom." This is similar to the rule that in order to assume a risk there must not only be knowledge of the existence of the risk, but an understanding of its nature and extent. See *Celorie v. Roberts Bros., Inc.,* 202 Or 671, 682-83, 276 P2d 416 (1954).

This, of course, is in accordance with both reality and logic, for the reason that a jury can properly find that a motorist approaching at a high rate of speed on a highway may not understand and appreciate either the density of the smoke or the length of the area along the highway covered by the smoke.

It follows from the testimony in this case that the fact that the smoke from this field burning operation was visible to plaintiff and to defendant Taylor as they approached did not absolve defendant Venell from his duty to warn them of the danger that dense smoke might well blow over and across the highway, as the majority would hold. For the same reasons, it follows from this testimony that the "causal connection" between the failure to give such a warning and the happening of the accident was not severed as a matter of law, as the majority would hold.

Again, this conclusion is supported by the decisions of other courts in "smoke" cases in which the smoke was also visible to approaching motorists, including *Pitcairn v. Whiteside, supra,* holding (34 NE2d at 947-49) that it was a question for the jury whether defendant's negligence was a concurring cause or a substantial factor in causing the accident and that plaintiff was not negligent as a matter of law in driving into the cloud of smoke; *Keith v. Yazoo & MVR Co., supra,* holding (151 So at 917-18) that in a case in which plaintiff entered smoke from a fire on a railroad right-of-way and was hit by another car, as in this case, that questions of contributory negligence and causation were for the jury; *Gulf Oil Corp. v. Turner, supra,* holding (235 So 2d at 467) that defendant's negligence was a concurring cause of the accident in that case; *Moore v. Town of Plymouth, supra,* holding (106 SE2d at 703) that the negligence of another truck which entered the "cloud" and hit plaintiff's car was not an independent, intervening cause so as to relieve defendant from liability; *Oviatt v. Garretson, supra,* holding (171 SW2d at 291) that it was a question for the jury whether defendant's negligence was a cause of the accident in view of the conduct of the driver of another car which also entered the cloud of smoke and hit plaintiff's car; and *Teilhet v. County of Santa Clara, supra,* holding (308 P2d at 360) that it was a jury question whether plaintiff was negligent in driving into the cloud of smoke.[1]

The majority, without citing any cases or other authority to support the rule adopted by it, would (by footnote) dismiss all of these cases as "unpersuasive,"

---

[1] As for plaintiff's possible contributory negligence, under the present rule of comparative negligence any such negligence would not provide a defense unless the jury found that plaintiff's negligence was greater than defendant's. See *Ryan v. First Nat. Bank & Trust Co. of Racine,* 236 Wis 226, 294 NW 832, 834 (1940), involving somewhat similar facts.

although recognizing that some of the decisions by courts of other states "seem to indicate that a warning might be necessary on the facts of the present case."

Although this court has not previously had occasion to consider this question in a field burning case, it held in *French v. Christner,* 173 Or 158, 171, 135 P2d 464, 143 P2d 674 (1943), that a plaintiff was not contributorily negligent as a matter of law in driving into the smoke of a brush fire adjacent to a highway, where he was rear-ended by another truck.[12]

In this case, as previously noted, there was evidence from which the jury could have found that the smoke did not appear to be dangerous when defendant Taylor first approached it, so as to make any negligence on his part a jury question. And, in any event, the jury could also find in this case, as in the "smoke" cases in other states, that any negligence by defendant Taylor did not supersede, but concurred with defendant's negligence in failure to warn in causing this accident. Indeed, this court has recognized that the question of proximate cause or cause in fact is almost always a question of fact for the jury and that rule has also been applied in "warning" cases. Cf. *Frame v. Arrow Towing Service, supra; Shelton v. Lowell et al,* 196 Or 430, 440, 249 P2d 958 (1952).[13] In my opinion,

---

[12] In *Dormaier v. Jesse,* 237 Or 578, 391 P2d 645 (1964), that case was distinguished on its facts in holding a defendant to be negligent as a matter of law in driving into a "pall of dust" at a speed of 40 miles per hour.

[13] These cases involve failure to place signs or flares warning approaching motorists of stalled or wrecked vehicles. See also *Ashland v. Pacific P. & L. Co.,* 239 Or 241, 252, 395 P2d 420, 397 P2d 538 (1964). Cf. *Tokstad v. Lund,* 255 Or 305, 466 P2d 938 (1970), and *Dawkins v. Truax Oil Co.,* 259 Or 532, 487 P2d 882 (1971), in which the approaching vehicles not only observed the stalled or stopped vehicle, but slowed down, with the result that there was no evidence "direct or indirect" that they would have done differently if warning signs or flares had been used.

there was substantial evidence in this case which required the submission of this question to the jury by reason of Article VII, § 3, of the Oregon Constitution. Cf. dissenting opinion in *Palmer v. Van Petten Lbr. Co.,* 265 Or 347, 379-89, 509 P2d 420 (1973).

In *Dokken v. Rieger,* 255 Or 433, 437, 467 P2d 968 (1970), in which the driver of a stalled truck failed to put out warning signals or flares, this court held that the jury could have found that if he had done so, instead of sitting in the cab of his truck, the approaching car "would not have proceeded as he did." Similarly, the jury could have found in this case that if defendant Venell had by his radio communications instructed the operator of the "rig" parked near the south end of the burning field to get out of the cab of his truck and flag or otherwise warn approaching cars of the danger of the dense smoke then starting to blow across the road, approaching motorists, including defendant Taylor, would have heeded the warning by slowing down substantially and that this accident would not have happened.

The jury could also have found, in my opinion, that just as defendant Venell, as a matter of "normal practice," made arrangements to warn owners of adjacent property before this one-hour field burning operation, in order to protect their property, a reason-

---

In this case, however, defendant Taylor did not slow down (except from 75 miles per hour to some 55 miles per hour) before entering this smoke and he testified that when he approached the smoke it was about 20 feet off the ground and that it appeared to be safe to proceed. The jury could properly find from this and other evidence in this case that if defendant had posted a flagman to stop or warn approaching cars of the danger that dense smoke might blow across and upon the road, approaching motorists, including defendant Taylor, would have heeded such a warning by slowing down substantially, and that if such a warning had been given to defendant Taylor he would have "done differently."

able and prudent person with his knowledge and experience would also have made arrangements to warn approaching motorists, in order to protect their lives.

For all of these reasons, I believe that this case was a "proper case" for submission to the jury of the question of fact whether defendant Venell was negligent in failing to warn approaching cars of the danger of smoke blowing across the highway adjacent to his field burning operations and whether such negligence, either independently or concurring with any negligence of defendant Taylor, was a cause of this accident. For the same reasons, I believe that the majority opinion is contrary to both the facts and the law in its holding, as a matter of law, that defendant had no duty to give any warning to approaching motorists and that a jury could not properly find that his failure to do so was a cause of the accident in this case.

I must therefore respectfully dissent.

McALLISTER, J., joins in this dissent.